# U.S. ex rel. SEILKOP

# V.

# INSIGHT GLOBAL, LLC

# EXHIBIT A

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A
EPO No. 4300668050

## EMERGENCY PURCUREMENT CONTRACT
## FOR
## COVID-19 CONTACT TRACING STAFFING SERVICES

THIS EMERGENCY PROCUREMENT CONTRACT for COVID-19 ("Contract") is entered into by and between the Commonwealth of Pennsylvania, acting through the Department of Health ("DOH") and Insight Global LLC ("Contractor").

**WHEREAS**, as set forth under Pennsylvania Statute Title 35 Pa.C.S.A. § 7301(a), the Governor of Pennsylvania (the "Governor") is responsible for meeting the dangers to this Commonwealth and its people presented by disasters; and

**WHEREAS**, pursuant to his disaster emergency authority provided under Pennsylvania Statute Title 35 Pa.C.S.A. § 7301(c), the Governor on March 6, 2020 declared an Emergency Disaster Declaration in Pennsylvania in order to mitigate the spread of coronavirus within the Commonwealth; and

**WHEREAS**, the Commonwealth and Contractor have negotiated this Emergency Procurement Contract as their final and entire agreement in regard to providing COVID-19 Contact Tracing Staffing Services to DOH.

**NOW THEREFORE**, intending to be legally bound hereby, DOH and Contractor agree as follows:

1.  Contractor shall, in accordance with the terms and conditions of this Contract, provide COVID-19 Contact Tracing Staffing Services ("the Services"), as more fully defined in the Statement of Work, to DOH.

2.  Contractor agrees to provide the Services as set forth in the Statement of Work, which is attached hereto as Exhibit B and made a part hereof, at the fees set forth in Exhibit B.

3.  The services to be provided by the Contractor hereunder have been approved by the Department of General Services as an emergency procurement, and the Contractor was issued an Emergency Purchase Order No. 4300668050. The Contractor may provide the services prior to full execution of the Contract based upon receipt of an Emergency Purchase Order. Upon full execution of the Contract, all services delivered or performed during the period following the approval of the emergency procurement and the Effective Date shall be merged into and covered by the terms of this Contract.

4.  This Contract is comprised of the following documents, which are listed in order of precedence in the event of a conflict between these documents:

    a.  The Contract document contained herein.

   b.  The Contract Terms and Conditions as negotiated between the DOH and the Contractor, which are attached hereto as **Exhibit A** and made part of this Contract.

   c.  The Statement of Work – COVID Contact Tracing Staffing Services which is attached hereto as **Exhibit B** and made a part hereof.

       **IN WITNESS WHEREOF**, the parties have signed this Contract below.  Execution by the Commonwealth is described in the Contract Terms and Conditions.

### INSIGHT GLOBAL LLC

By: _____

           (Vice) President

       Ryan McGinn 7/24/2020
_____
       Printed Name/Date

         20-8775560
_____
       Federal I.D. Number

### COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF HEALTH

By: _____
    Department of Health         Date

**APPROVED AS TO FORM AND LEGALITY:**

_____           _____
Office of Chief Counsel     Date         Office of General Counsel   Date

**Amy M. Elliott**  Digitally signed by Amy M. Elliott
DN: cn=Amy M. Elliott, o=Pennsylvania Office of Attorney General, ou=Chief Deputy Attorney General, email=aelliott@attorneygeneral.gov, c=US
Date: 2020.07.27 18:07:57 -04'00'
_____
Office of Attorney General     Date

**APPROVED:**

Robert J Crouse  Digitally signed by Robert J Crouse
Date: 2020.07.29 15:49:49 -04'00'
_____
Comptroller         Date

**EXHIBIT A**
**CONTRACT TERMS AND CONDITIONS**

### V.2 CONTRACT-002.1b Term of Contract -- PO (July 2015)

The term of the Contract created by the issuance of the Purchase Order ("PO") shall commence ("Contract Effective Date") on the Original PO Effective Date printed on the Purchase Order after the Purchase Order has been fully executed by the Commonwealth (signed and approved as required by Commonwealth contracting procedures and sent to the Contractor). If the Purchase Order output form does not have "Fully Executed" at the top of the first page and does not have the name of the Purchasing Agent printed in the appropriate box, the Purchase Order has not been fully executed. Subject to the other provisions of the Contract, the Contract shall end on the later of: a) complete delivery and acceptance of the awarded item(s); b) the expiration of any specified warranty and maintenance period; c) payment by the Commonwealth for the item(s) received; or d) any Expiration Date identified in the Purchase Order.

### V.3 CONTRACT-002.3 Extension of Contract Term (Nov 30 2006)

The Commonwealth reserves the right, upon written notice to the Contractor, to extend any single term of the Contract for up to three (3) months upon the same terms and conditions.

### V.4 CONTRACT-003.1c Signatures - PO (July 2015)

The Contract shall not be a legally binding contract until the fully-executed Purchase Order has been sent to the Contractor. No Commonwealth employee has the authority to verbally direct the commencement of any work or delivery of any supply under this Purchase Order prior to the Original PO Effective Date. The Contractor hereby waives any claim or cause of action for any service or work performed prior to the Original PO Effective Date.

The services to be provided by the Contractor hereunder have been approved by the Department of General Services as an emergency procurement, and the Contractor was issued an Emergency Purchase Order No. 4300668050. Notwithstanding anything to the contrary contained within this Contract, the Contractor may provide the services prior to full execution of the Contract based upon receipt of an Emergency Purchase Order. Upon full execution of the Contract, all services delivered or performed during the period following the approval of the emergency procurement and the Effective Date shall be merged into and covered by the terms of this Contract. The parties agree to mutually make all actions reasonably necessary to execute the Contract in a timely manner.

The Purchase Order may be electronically signed by the Commonwealth. The electronically-printed name of the Purchasing Agent, or in the case of an Auto-Purchase Order the name of the Centralized Purchasing Group, represents the signature of that individual(s) who has the authority, on behalf of the Commonwealth, to bind the Commonwealth to the terms of the Contract. If the Purchase Order output form does not have "Fully Executed" at the top of the first page and does not have the name of the Purchasing Agent, or in the case of an Auto-Purchase Order the name of the Centralized Purchasing Group, printed in the appropriate box, the Contract has not been fully executed.

The fully-executed Purchase Order may be sent to the Contractor electronically or through facsimile equipment. The electronic transmission of a Purchase Order shall require acknowledgement of receipt of the transmission by the Contractor. Receipt of the electronic or facsimile transmission of the Purchase Order shall constitute receipt of the fully-executed Purchase Order.

The Commonwealth and the Contractor specifically agree as follows:

a. No handwritten signature shall be required in order for the Purchase Order to be legally enforceable.

b. The parties agree that no writing shall be required in order to make the Purchase Order legally binding, notwithstanding contrary requirements in any law. The parties hereby agree not to contest the validity or enforceability of a genuine Purchase Order or acknowledgement issued electronically under the provisions of a statute of frauds or any other applicable law relating to whether certain agreements be in writing and signed by the party bound thereby. Any genuine Purchase Order or acknowledgement issued electronically, if introduced as evidence on paper in any judicial, arbitration, mediation, or administrative proceedings, will be admissible as between the parties to the same extent and under the same conditions as other business records originated and maintained in documentary form. Neither party shall contest the admissibility of copies of a genuine Purchase Order or acknowledgements under either the business records exception to the hearsay rule or the best evidence rule on the basis that the Purchase Order or acknowledgement were not in writing or signed by the parties. A Purchase Order or acknowledgment shall be deemed to be genuine for all purposes if it is transmitted to the location designated for such documents.

c. Each party will immediately take steps to verify any document that appears to be obviously garbled in transmission or improperly formatted to include re-transmission of any such document if necessary.

## V.5 CONTRACT-004.1a Definitions (Oct 2013)

As used in this Contract, these words shall have the following meanings:

a. <u>Agency:</u>  The Pennsylvania Department of Health.

b. <u>Contracting Officer:</u> The person authorized to administer this Contract for the Commonwealth and to make written determinations with respect to the Contract.

c. <u>Days: Unless</u> specifically indicated otherwise, days mean calendar days.

d. <u>Services:</u> All <u>Contractor</u> activity specified in the Contract.

## V.6 CONTRACT-006.1 Independent Prime Contractor (Oct 2006)

In performing its obligations under the Contract, the Contractor will act as an independent contractor and not as an employee or agent of the Commonwealth.  The Contractor will be responsible for all services in this Contract whether or not Contractor provides them directly. Further, the Contractor is the sole point of contact with regard to all contractual matters, including payment of any and all charges resulting from the Contract.

## V.7 CONTRACT-007.01b Delivery of Services (Nov 30 2006)

The Contractor shall proceed with all due diligence in the performance of the services with qualified personnel, in accordance with the completion criteria set forth in the Contract.

**V.8 CONTRACT-008.1a Warranty. (Oct 2006)**

The Contractor warrants that all items furnished and all services performed by the Contractor, its agents and subcontractors shall be delivered in accordance with the specifications outlined in the Contract. Unless otherwise stated in the Contract, all items are warranted for a period of thirty (30) days following delivery by the Contractor and acceptance by the Commonwealth. In the event the Commonwealth determines that the services do not conform to the specifications of the Contract within the warranty period outlined above, the Contractor shall repair, replace or otherwise correct any problem with the delivered item, for up to forty (40) hours' worth of services under this Contract. When an item is replaced, it shall be replaced with an item of equivalent or superior quality without any additional cost to the Commonwealth, provided such replacement services shall be limited to forty (40) hours' worth of services under this Contract.

**V.10 CONTRACT-009.1d Ownership Rights (Oct 2006)**

The Commonwealth shall have unrestricted authority to reproduce, distribute, and use any submitted report, data, or material, and any software or modifications and any associated documentation that is designed or developed and delivered to the Commonwealth as part of the performance of the Contract.

**V.12 CONTRACT-011.1a Compliance With Law (Oct 2006)**

The Contractor shall comply with all applicable federal and state laws and regulations and local ordinances in the performance of the Contract.

**V.13 CONTRACT-013.1 Environmental Provisions (Oct 2006)**

In the performance of the Contract, the Contractor shall minimize pollution and shall strictly comply with all applicable environmental laws and regulations, including, but not limited to: the      Clean Streams Law Act of June 22, 1937 (P.L. 1987, No. 394), as amended 35 P.S. Section 691.601 et seq.; the Pennsylvania Solid Waste Management Act, Act of July 7, 1980 (P.L. 380, No. 97), as amended, 35 P.S. Section 6018.101 et seq. ; and the Dam Safety and Encroachment Act, Act of November 26, 1978 (P.L. 1375, No. 325), as amended , 32 P.S. Section 693.1.

**V.14 CONTRACT-014.1 Post-Consumer Recycled Content (June 2016)**

Except as specifically waived by the Department of General Services in writing, any products which are provided to the Commonwealth as a part of the performance of the Contract must meet the minimum percentage levels for total recycled content as specified by the Environmental Protection Agency in its Comprehensive Procurement Guidelines, which can be found at

https://www.epa.gov/smm/comprehensive-procurement-guideline-cpg-program .

For the avoidance of doubt, counsel for the Department of General Services has determined that Contractor shall not provide any products under this Contract that are subject to this requirement. The terms of this section are not applicable to the services outlined in the Statement of Work set forth in Exhibit B to the Contract.

## V.16 CONTRACT-015.1 Compensation (Oct 2006)

Unless mutually agreed otherwise in a formal written amendment to the Contract, (i) the Contractor shall be required to furnish the awarded item(s) at the price(s) quoted in the Purchase Order, and (ii) all item(s) shall be delivered within the time period(s) specified in the Purchase Order. The Contractor shall be compensated only for item(s) that are delivered to the Commonwealth.

## V.17 CONTRACT-015.1A Compensation/Expenses (Oct 2013)

Unless mutually agreed otherwise in a formal written amendment to the Contract, (i) the Contractor shall be required to perform the specified services at the price(s) quoted in the Contract, and (ii) all services shall be performed within the time period(s) specified in the Contract. The Contractor shall be compensated only for work performed in accordance with the specifications of the Contract. The Contractor shall not be allowed or paid travel or per diem expenses except as specifically set forth in the Contract.

## V.18 CONTRACT-015.2 Billing Requirements (February 2012)

Unless the Contractor has been authorized by the Commonwealth for Evaluated Receipt Settlement or Vendor Self-Invoicing, the Contractor shall include in all of its invoices the following minimum information:

- Vendor name and "Remit to" address, including SAP Vendor number;
- Bank routing information, if ACH;
- SAP Purchase Order number;
- Delivery Address, including name of Commonwealth agency;
- Description of the supplies/services delivered in accordance with SAP Purchase Order (include purchase order line number if possible);
- Quantity provided;
- Unit price;
- Price extension;
- Total price; and
- Delivery date of supplies or services.

If an invoice does not contain the minimum information set forth in this paragraph, the Commonwealth may return the invoice as improper. If the Commonwealth returns an invoice as improper, the time for processing a payment will be suspended until the Commonwealth receives a correct invoice. The Contractor may not receive payment until the Commonwealth has received a correct invoice.

Contractors are required to establish separate billing accounts with each using agency and invoice them directly. Contractor shall invoice the Commonwealth on a weekly basis for all hours worked by Contractor resources during the previous week. Each invoice shall be itemized with adequate detail and match the line item on the Purchase Order. In no instance shall any payment be made for services to the Contractor that are not in accordance with the prices on the Purchase Order, the Contract, updated price lists or any discounts negotiated by the purchasing agency.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**V.19 CONTRACT-016.1 Payment (Oct 2006)**

    a.   The Commonwealth shall put forth reasonable efforts to make payment by the required payment date. The required payment date is thirty (30) days after a proper invoice actually is received at the "Bill To" address (a "proper" invoice is not received until the Commonwealth accepts the service as satisfactorily performed based on the criteria that the services conform to the specifications of the Contract). Payment may be delayed if the payment amount on an invoice is not based upon the price(s) as stated in the Contract. If any payment is not made within fifteen (15) days after the required payment date, the Commonwealth may pay interest as determined by the Secretary of Budget in accordance with Act No. 266 of 1982 and regulations promulgated pursuant thereto. Payment should not be construed by the Contractor as acceptance of the service performed by the Contractor. The Commonwealth reserves the right to conduct further testing and inspection after payment, but within thirty (30) days after performance, and to reject the service if such post payment testing or inspection discloses failure to meet Contract specifications. The Contractor agrees that the Commonwealth may set off the amount of any state tax liability or other obligation of the Contractor or its subsidiaries to the Commonwealth against any payments due the Contractor under any contract with the Commonwealth.

**V.20 CONTRACT-016.2 Payment – Electronic Funds Transfer (February 2014)**

    a.   The Commonwealth will make contract payments through the Automated Clearing House (ACH). Within 10 days of award of the contract or purchase order, the contractor must submit or must have already submitted their ACH information within their user profile in the Commonwealth's procurement system (SRM).

    b.   The contractor must submit a unique invoice number with each invoice submitted. The unique invoice number will be listed on the Commonwealth of Pennsylvania's ACH remittance advice to enable the contractor to properly apply the state agency's payment to the invoice submitted.

    c.   It is the responsibility of the contractor to ensure that the ACH information contained in SRM is accurate and complete. Failure to maintain accurate and complete information may result in delays in payments.

**V.21 CONTRACT-017.1 Taxes (Dec 5 2006)**

The Commonwealth is exempt from all excise taxes imposed by the Internal Revenue Service and has accordingly registered with the Internal Revenue Service to make tax free purchases under Registration No. 23-23740001-K. With the exception of purchases of the following items, no exemption certificates are required and none will be issued: undyed diesel fuel, tires, trucks, gas guzzler emergency vehicles, and sports fishing equipment. The Commonwealth is also exempt from Pennsylvania state sales tax, local sales tax, public transportation assistance taxes and fees and vehicle rental tax. The Department of Revenue regulations provide that exemption certificates are not required for sales made to governmental entities and none will be issued. Nothing in this paragraph is meant to exempt a construction contractor from the payment of any of these taxes or fees which are required to be paid with respect to the purchase, use, rental, or lease of tangible personal property or taxable services used or transferred in connection with the performance of a construction contract.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**V.22 CONTRACT-018.1 Assignment of Antitrust Claims (Oct 2006)**

The Contractor and the Commonwealth recognize that in actual economic practice, overcharges by the Contractor's suppliers resulting from violations of state or federal antitrust laws are in fact borne by the Commonwealth. As part of the consideration for the award of the Contract, and intending to be legally bound, the Contractor assigns to the Commonwealth all right, title and interest in and to any claims the Contractor now has, or may acquire, under state or federal antitrust laws relating to the products and services which are the subject of this Contract.

**V.24 CONTRACT-020.1 Audit Provisions (Oct 2006)**

The Commonwealth shall have the right, at reasonable times and at a site designated by the Commonwealth, to audit the books, documents and records of the Contractor to the extent that the books, documents and records relate to costs or pricing data for the Contract. The Contractor agrees to maintain records which will support the prices charged and costs incurred for the Contract. The Contractor shall preserve books, documents, and records that relate to costs or pricing data for the Contract for a period of three (3) years from date of final payment. The Contractor shall give full and free access to all records to the Commonwealth and/or their authorized representatives.

**V.25 CONTRACT-020.2 Single Audit Act of 1984 (Oct 2013)**

In compliance with the *Single Audit Act of 1984,* the Contractor agrees to the following:

a.  This Contract is subject to audit by federal and state agencies or their authorized representative in accordance with the auditing standards promulgated by the Comptroller General of the United States and specified in *Government Auditing Standards,* 1994 Revisions (Yellow Book).

b.  The audit requirement of this Contract will be satisfied if a single audit is performed under the provisions of the *Single Audit Act of 1984, 31 U.S.C.* Section 7501, et seq, and all rules and regulations promulgated pursuant to the Act.

c.  The Commonwealth reserves the right for federal and state agencies or their authorized representatives to perform additional audits of a financial/compliance, economy/efficiency, or program results nature, if deemed necessary.

The Contractor further agrees to comply with requirements that may be issued by the state agency upon receipt of additional guidance received from the federal government regarding the *Single Audit Act of 1984.*

**V.26 CONTRACT-021.1 Default (Oct 2013)**

a.  The Commonwealth may, subject to the Force Majeure provisions of this Contract, and in addition to its other rights under the Contract, declare the Contractor in default by written notice thereof to the Contractor, and terminate (as provided in the Termination Provisions of this Contract) the whole or any part of this Contract or any Purchase Order for any of the following reasons:

1)  Failure to begin work within the mutually agreed upon time specified in the Contract or Purchase Order or as otherwise specified;

2) Failure to perform the work with sufficient labor, equipment, or material to ensure the completion of the specified work in accordance with the Contract or Purchase Order terms;

3) Unsatisfactory performance of the work (based on the criteria that the work does not conform to the specifications of the Contract);

4) Failure to deliver the awarded item(s) within the time specified in the Contract or Purchase Order or as otherwise specified;

5) Improper delivery (based on the criteria that the delivery does not conform to the specifications of the Contract);

6) Failure to provide an item(s) which is in conformance with the specifications referenced in the Contract or Purchase Order;

7) Intentionally omitted;

8) Failure or refusal to remove material, or remove and replace any work rejected as defective or unsatisfactory;

9) Discontinuance of work without approval;

10) Failure to resume work, which has been discontinued, within a reasonable time after notice to do so;

11) Insolvency or bankruptcy;

12) Assignment made for the benefit of creditors;

13) Failure or refusal within 10 days after written notice by the Contracting Officer, to make payment or show cause why payment should not be made, of any amounts due for materials furnished, labor supplied or performed, for equipment rentals, or for utility services rendered;

14) Failure to protect, to repair, or to make good any damage or injury to property to the extent required by the terms of the Contract;

15) Breach of any provision of the Contract;

16) Failure to comply with representations made in the Contractor's bid/proposal; or

17) Failure to comply with applicable industry standards, customs, and practice.

b. In the event that the Commonwealth terminates this Contract or any Purchase Order in whole or in part as provided in Subparagraph a. above, the Commonwealth may procure, upon such terms and in such manner as it determines, items similar or identical to those so terminated, and the Contractor shall be liable to the Commonwealth for any reasonable excess costs for such similar or identical items included within the terminated part of the Contract or Purchase Order, provided however Contractor's liability for any such reasonable costs shall be limited to three (3) months' worth of services.

c. If the Contract or a Purchase Order is terminated as provided in Subparagraph a. above, the Commonwealth, in addition to any other rights provided in this paragraph, may require the

Contractor to transfer title and deliver immediately to the Commonwealth in the manner and to the extent directed by the Contracting Officer, such partially completed items, including, where applicable, reports, working papers and other documentation, as the Contractor has specifically produced or specifically acquired for the performance of such part of the Contract or Purchase Order as has been terminated. Except as provided below, payment for completed work accepted by the Commonwealth shall be at the Contract price. Except as provided below, payment for partially completed items including, where applicable, reports and working papers, delivered to and accepted by the Commonwealth shall be in an amount agreed upon by the Contractor and Contracting Officer. The Commonwealth may withhold from amounts otherwise due the Contractor for such completed or partially completed works, such sum as the Contracting Officer determines to be necessary to protect the Commonwealth against loss.

d.  The rights and remedies of the Commonwealth provided in this paragraph shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract.

e.  The Commonwealth's failure to exercise any rights or remedies provided in this paragraph shall not be construed to be a waiver by the Commonwealth of its rights and remedies in regard to the event of default or any succeeding event of default.

f.  Following exhaustion of the Contractor's administrative remedies as set forth in the Contract Controversies Provision of the Contract, the Contractor's exclusive remedy shall be to seek damages in the Board of Claims.

## V.27 CONTRACT-022.1 Force Majeure (Oct 2006)

Neither party will incur any liability to the other if its performance of any obligation under this Contract is prevented or delayed by causes beyond its control and without the fault or negligence of either party. Causes beyond a party's control may include, but aren't limited to, acts of God or war, changes in controlling law, regulations, orders or the requirements of any governmental entity, severe weather conditions, civil disorders, natural disasters, fire, epidemics and quarantines, general strikes throughout the trade, and freight embargoes.

The Contractor shall notify the Commonwealth orally within five (5) days and in writing within ten (10) days of the date on which the Contractor becomes aware, or should have reasonably become aware, that such cause would prevent or delay its performance. Such notification shall (i) describe fully such cause(s) and its effect on performance, (ii) state whether performance under the contract is prevented or delayed and (iii) if performance is delayed, state a reasonable estimate of the duration of the delay. The Contractor shall have the burden of proving that such cause(s) delayed or prevented its performance despite its diligent efforts to perform and shall produce such supporting documentation as the Commonwealth may reasonably request. After receipt of such notification, the Commonwealth may elect to cancel the Contract, cancel the Purchase Order, or to extend the time for performance as reasonably necessary to compensate for the Contractor's delay.

In the event of a declared emergency by competent governmental authorities, the Commonwealth by notice to the Contractor, may suspend all or a portion of the Contract or Purchase Order.

## V.28 CONTRACT-023.1a Termination Provisions (Oct 2013)

The Commonwealth has the right to terminate this Contract or any Purchase Order for any of the following reasons. Termination shall be effective upon written notice to the Contractor.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

a.  **TERMINATION FOR CONVENIENCE**: The Commonwealth shall have the right to terminate the Contract or a Purchase Order for its convenience with thirty (30) days written notice to the Contractor if the Commonwealth determines termination to be in its best interest. The Contractor shall be paid for work completed in accordance with the specifications of the Contract prior to the effective date of the termination, but in no event shall the Contractor be entitled to recover loss of profits.

b.  **NON-APPROPRIATION**: The Commonwealth's obligation to make payments during any Commonwealth fiscal year succeeding the current fiscal year shall be subject to availability and appropriation of funds. When funds (state and/or federal) are not appropriated or otherwise made available to support continuation of performance in a subsequent fiscal year period, the Commonwealth shall have the right to terminate the Contract or a Purchase Order. The Contractor shall be reimbursed for the reasonable value of any nonrecurring costs incurred but not amortized in the price of the supplies or services delivered under the Contract. Such reimbursement shall not include loss of profit, loss of use of money, or administrative or overhead costs. The reimbursement amount may be paid from any appropriations available for that purpose.

c.  **TERMINATION FOR CAUSE**: The Commonwealth shall provide thirty (30) days written notice to Contractor in the event of Contractor default as defined in Section V.26 herein, or Commonwealth intent to terminate the Contract or Purchase Order for cause. In the event Contractor does not cure the default within the thirty (30) day notice period, the Commonwealth shall have the right to terminate the Contract or a Purchase Order for Contractor default under the Default Clause, or for other cause as specified in the Contract or by law upon written notice to the Contractor. If it is later determined that the Commonwealth erred in terminating the Contract or a Purchase Order for cause, then, at the Commonwealth's discretion, the Contract or Purchase Order shall be deemed to have been terminated for convenience under the Subparagraph a.

**V.29 CONTRACT-024.1 Contract Controversies (Oct 2011)**

a.  In the event of a controversy or claim arising from the Contract, the Contractor must, within six months after the cause of action accrues, file a written claim with the contracting officer for a determination. The claim shall state all grounds upon which the Contractor asserts a controversy exists. If the Contractor fails to file a claim or files an untimely claim, the Contractor is deemed to have waived its right to assert a claim in any forum. At the time the claim is filed, or within sixty (60) days thereafter, either party may request mediation through the Commonwealth Office of General Counsel Dispute Resolution Program.

b.  If the Contractor or the contracting officer requests mediation and the other party agrees, the contracting officer shall promptly make arrangements for mediation. Mediation shall be scheduled so as to not delay the issuance of the final determination beyond the required 120 days after receipt of the claim if mediation is unsuccessful. If mediation is not agreed to or if resolution is not reached through mediation, the contracting officer shall review timely-filed claims and issue a final determination, in writing, regarding the claim. The final determination shall be issued within 120 days of the receipt of the claim, unless extended by consent of the contracting officer and the Contractor. The contracting officer shall send his/her written determination to the Contractor. If the contracting officer fails to issue a final determination within the 120 days (unless extended by consent of the parties), the claim shall be deemed denied. The contracting officer's determination shall be the final order of the purchasing agency.

c.  Within fifteen (15) days of the mailing date of the determination denying a claim or within 135 days of filing a claim if, no extension is agreed to by the parties, whichever occurs first, the Contractor may file a statement of claim with the Commonwealth Board of Claims. Pending a final judicial resolution of a controversy or claim, the Contractor shall proceed diligently with the performance of the Contract in a manner consistent with the determination of the contracting officer and the Commonwealth shall compensate the Contractor pursuant to the terms of the Contract.

## V.30 CONTRACT-025.1 Assignability and Subcontracting (Oct 2013)

a.  Subject to the terms and conditions of this paragraph, this Contract shall be binding upon the parties and their respective successors and assigns.

b.  The Contractor shall not subcontract with any person or entity to perform all or any part of the work to be performed under this Contract without the prior written consent of the Contracting Officer, which consent may be withheld at the sole and absolute discretion of the Contracting Officer.

c.  The Contractor may not assign, in whole or in part, this Contract or its rights, duties, obligations, or responsibilities hereunder without the prior written consent of the Contracting Officer, which consent may be withheld at the sole and absolute discretion of the Contracting Officer.

d.  Notwithstanding the foregoing, the Contractor may, without the consent of the Contracting Officer, assign its rights to payment to be received under the Contract, provided that the Contractor provides written notice of such assignment to the Contracting Officer together with a written acknowledgement from the assignee that any such payments are subject to all of the terms and conditions of this Contract.

e.  For the purposes of this Contract, the term "assign" shall include, but shall not be limited to, the sale, gift, assignment, pledge, or other transfer of any ownership interest in the Contractor provided, however, that the term shall not apply to the sale or other transfer of stock of a publicly traded company.

f.  Any assignment consented to by the Contracting Officer shall be evidenced by a written assignment agreement executed by the Contractor and its assignee in which the assignee agrees to be legally bound by all of the terms and conditions of the Contract and to assume the duties, obligations, and responsibilities being assigned.

g.  A change of name by the Contractor, following which the Contractor's federal identification number remains unchanged, shall not be considered to be an assignment hereunder. The Contractor shall give the Contracting Officer written notice of any such change of name.

## V.31 CONTRACT-026.1 Other Contractors (Oct 2006)

The Commonwealth may undertake or award other contracts for additional or related work, and the Contractor shall fully cooperate with other contractors and Commonwealth employees, and coordinate its work with such additional work as may be required. The Contractor shall not commit or permit any act that will interfere with the performance of work by any other contractor or by Commonwealth employees. This paragraph shall be included in the Contracts of all contractors with which this Contractor will be required to cooperate. The Commonwealth shall equitably enforce this paragraph as to all contractors to prevent the imposition of unreasonable burdens on any contractor.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**V.32 CONTRACT-027.1 Nondiscrimination/Sexual Harassment Clause (August 2018)**

The Contractor agrees:

a.  In the hiring of any employee(s) for the manufacture of supplies, performance of work, or any other activity required under the contract or any subcontract, the Contractor, each subcontractor, or any person acting on behalf of the Contractor or subcontractor shall not discriminate by reason of race, gender, creed, color, sexual orientation, gender identity or expression, or in violation of the *Pennsylvania Human Relations Act* (PHRA) and applicable federal laws, against any citizen of this Commonwealth who is qualified and available to perform the work to which the employment relates.

b.  *Neither* the Contractor nor any subcontractor nor any person on their behalf shall in any manner discriminate by reason of race, gender, creed, color, sexual orientation, gender identity or expression, or in violation of the PHRA and applicable federal laws, against or intimidate any employee involved in the manufacture of supplies, the performance of work, or any other activity required under the contract.

c.  Neither the *Contractor* nor any subcontractor nor any person on their behalf shall in any manner discriminate by reason of race, gender, creed, color, sexual orientation, gender identity or expression, or in violation of the PHRA and applicable federal laws, in the provision of services under the contract.

d.  Neither the *Contractor* nor any subcontractor nor any person on their behalf shall in any manner discriminate against employees by reason of participation in or decision to refrain from participating in labor activities protected under the *Public Employee Relations Act, Pennsylvania Labor Relations Act* or *National Labor Relations Act,* as applicable and to the extent determined by entities charged with such Acts' enforcement, and shall comply with any provision of law establishing organizations as employees' exclusive representatives.

e.  The Contractor and each subcontractor shall establish and maintain a written nondiscrimination and sexual harassment policy and shall inform their employees in writing of the policy. The policy must contain a provision that sexual harassment will not be tolerated and employees who practice it will be disciplined. Posting this Nondiscrimination/Sexual Harassment Clause conspicuously in easily-accessible and well-lighted places customarily frequented by employees and at or near where the contracted services are performed shall satisfy this requirement for employees with an established work site.

f.  The Contractor and each subcontractor shall not discriminate by reason of race, gender, creed, color, sexual orientation, gender identity or expression, or in violation of PHRA and applicable federal laws, against any subcontractor or supplier who is qualified to perform the work to which the contract relates.

g.  The Contractor and each subcontractor represents that it is presently in compliance with and will maintain compliance with all applicable federal, state, and local laws, regulations and policies relating to nondiscrimination and sexual harassment. The Contractor and each subcontractor further represents that it has filed a Standard Form 100 Employer Information Report ("EEO-1") with the U.S. Equal Employment Opportunity Commission ("EEOC") and shall file an annual EEO-1 report with the EEOC as required for employers' subject to *Title VII* of the *Civil Rights Act of 1964,* as amended, that have 100 or more employees and employers that have federal government contracts or first-tier subcontracts and have 50 or more employees. The Contractor and each subcontractor shall, upon request and within the time periods requested by the Commonwealth, furnish all necessary employment documents and records, including EEO-1 reports, and permit access to their books, records, and accounts by the contracting agency and the

Bureau of Diversity, Inclusion and Small Business Opportunities for purpose of ascertaining compliance with provisions of this Nondiscrimination/Sexual Harassment Clause.

h.   The Contractor shall include the provisions of this Nondiscrimination/Sexual Harassment Clause in every subcontract so that those provisions applicable to subcontractors will be binding upon each subcontractor.

i.   The Contractor's and each subcontractor's obligations pursuant to these provisions are ongoing from and after the effective date of the contract through the termination date thereof. Accordingly, the Contractor and each subcontractor shall have an obligation to inform the Commonwealth if, at any time during the term of the contract, it becomes aware of any actions or occurrences that would result in violation of these provisions.

j.   The Commonwealth may cancel or terminate the contract and all money due or to become due under the contract may be forfeited for a violation of the terms and conditions of this Nondiscrimination/Sexual Harassment Clause. In addition, the agency may proceed with debarment or suspension and may place the Contractor in the Contractor Responsibility File.

## V.33 CONTRACT-028.1 Contractor Integrity Provisions (January 2015)

It is essential that those who seek to contract with the Commonwealth of Pennsylvania ("Commonwealth") observe high standards of honesty and integrity. They must conduct themselves in a manner that fosters public confidence in the integrity of the Commonwealth contracting and procurement process.

1. **DEFINITIONS.** For purposes of these Contractor Integrity Provisions, the following terms shall have the meanings found in this Section:

a.   **"Affiliate"** means two or more entities where (a) a parent entity owns more than fifty percent of the voting stock of each of the entities; or (b) a common shareholder or group of shareholders owns more than fifty percent of the voting stock of each of the entities; or (c) the entities have a common proprietor or general partner.

b.   **"Consent"** means written permission signed by a duly authorized officer or employee of the Commonwealth, provided that where the material facts have been disclosed, in writing, by prequalification, bid, proposal, or contractual terms, the Commonwealth shall be deemed to have consented by virtue of the execution of this contract.

c.   **"Contractor"** means the individual or entity, that has entered into this contract with the Commonwealth.

d.   **"Contractor Related Parties"** means any affiliates of the Contractor and the Contractor's executive officers, Pennsylvania officers and directors, or owners of 5 percent or more interest in the Contractor.

e.   **"Financial Interest"** means either:

(1) Ownership of more than a five percent interest in any business; or

(2) Holding a position as an officer, director, trustee, partner, employee, or holding any position of management.

f.   **"Gratuity"** means tendering, **giving**, or providing anything of more than nominal monetary value including, but not limited to, cash, travel, entertainment, gifts, meals, lodging, loans, subscriptions,

advances, deposits of money, services, employment, or contracts of any kind. The exceptions set forth in the *Governor's Code of Conduct, Executive Order 1980-18*, the *4 Pa. Code §7.153(b)*, shall apply.

g. **"Non-bid Basis"** means a contract awarded or executed by the Commonwealth with Contractor without seeking bids or proposals from any other potential bidder or offeror.

2. In furtherance of this policy, Contractor agrees to the following:

a. Contractor shall maintain the highest standards of honesty and integrity during the performance of this contract and shall take no action in violation of state or federal laws or regulations or any other applicable laws or regulations, or other requirements applicable to Contractor or that govern contracting or procurement with the Commonwealth.

b. Contractor shall establish and implement a written business integrity policy, which includes, at a minimum, the requirements of these provisions as they relate to the Contractor activity with the Commonwealth and Commonwealth employees and which is made known to all Contractor employees. Posting these Contractor Integrity Provisions conspicuously in easily-accessible and well-lighted places customarily frequented by employees and at or near where the contract services are performed shall satisfy this requirement.

c. Contractor, its affiliates, agents, employees and anyone in privity with Contractor shall not accept, agree to give, offer, confer or agree to confer or promise to confer, directly or indirectly, any gratuity or pecuniary benefit to any person, or to influence or attempt to influence any person in violation of any federal or state law, regulation, executive order of the Governor of Pennsylvania, statement of policy, management directive or any other published standard of the Commonwealth in connection with performance of work under this contract, except as provided in this contract.

d. Contractor shall not have a financial interest in any other contractor, subcontractor, or supplier providing services, labor or material under this contract, unless the financial interest is disclosed to the Commonwealth in writing and the Commonwealth consents to Contractor's financial interest prior to Commonwealth execution of the contract. Contractor shall disclose the financial interest to the Commonwealth at the time of bid or proposal submission, or if no bids or proposals are solicited, no later than the Contractor's submission of the contract signed by Contractor.

e. Contractor certifies to the best of its knowledge and belief that within the last five (5) years Contractor or Contractor Related Parties have not:

(1) been indicted or convicted of a crime involving moral turpitude or business honesty or integrity in any jurisdiction;

(2) been suspended, debarred or otherwise disqualified from entering into any contract with any governmental agency;

(3) had any business license or professional license suspended or revoked;

(4) had any sanction or finding of fact imposed as a result of a judicial or administrative proceeding related to fraud, extortion, bribery, bid rigging, embezzlement, misrepresentation or anti-trust; and

(5) been, and is not currently, the subject of a criminal investigation by any federal, state or local prosecuting or investigative agency and/or civil anti-trust investigation by any federal, state or local prosecuting or investigative agency.

If Contractor cannot so certify to the above, then it must submit along with its bid, proposal or contract a written explanation of why such certification cannot be made and the Commonwealth will determine whether a contract may be entered into with the Contractor. The Contractor's obligation pursuant to this certification is ongoing from and after the effective date of the contract through the termination date thereof. Accordingly, the Contractor shall have an obligation to immediately notify the Commonwealth in writing if at any time during the term of the contract it becomes aware of any event which would cause the Contractor's certification or explanation to change. Contractor acknowledges that the Commonwealth may, in its sole discretion, terminate the contract for cause if it learns that any of the certifications made herein are currently false due to intervening factual circumstances or were false or should have been known to be false when entering into the contract.

f.  Contractor shall comply with the requirements of the *Lobbying Disclosure Act (65 Pa.C.S. §13A01 et seq.)* regardless of the method of award. If this contract was awarded on a Non-bid Basis, Contractor must also comply with the requirements of the *Section 1641 of the Pennsylvania Election Code (25 P.S. §3260a).*

g.  When contractor has reason to believe that any breach of ethical standards as set forth in law, the Governor's Code of Conduct, or these Contractor Integrity Provisions has occurred or may occur, including but not limited to *contact* by a Commonwealth officer or employee which, if acted upon, would violate such ethical standards, Contractor shall immediately notify the Commonwealth contracting officer or the Office of the State Inspector General in writing.

h.  Contractor, by submission of its bid or proposal and/or execution of this contract and by the submission of any bills, invoices or requests for payment pursuant to the contract, certifies and represents that is has not violated any of these Contractor Integrity Provisions in connection with the submission of the bid or proposal, during any contract negotiations or during the term of the contract, to include any extensions thereof. Contractor shall immediately notify the Commonwealth in writing of any actions for occurrences that would result in a violation of these Contractor Integrity Provisions. Contractor agrees to reimburse the Commonwealth for the reasonable costs of investigation incurred by the Office of the State Inspector General for investigations of the Contractor's compliance with the terms of this or any other agreement between the Contractor and the Commonwealth that results in the suspension or debarment of the Contractor. Contractor shall not be responsible for investigative costs for investigations that do not result in the Contractor's suspension or debarment.

i.  Contractor shall cooperate with the Office of the State Inspector General in its investigation of any alleged Commonwealth agency or employee breach of ethical standards and any alleged Contractor non-compliance with these Contractor Integrity Provisions. Contractor agrees to make identified Contractor employees available for interviews at reasonable times and places. Contractor, upon the inquiry or request of an Inspector General, shall provide, or if appropriate, make promptly available for inspection or copying, any information of any type or form deemed relevant by the Office of the State Inspector General to Contractor's integrity and compliance with these provisions. Such information may include, but shall not be limited to, Contractor's business or financial records, documents or files of any type or form that refer to or concern this contract. Contractor shall incorporate this paragraph in any agreement, contract or subcontract it enters into

in the course of the performance of this contract/agreement solely for the purpose of obtaining subcontractor compliance with this provision. The incorporation of this provision in a subcontract shall not create privity of contract between the Commonwealth and any such subcontractor, and no third party beneficiaries shall be created thereby.

j.  For violation of any of these Contractor Integrity Provisions, the Commonwealth may terminate this and any other contract with Contractor, claim liquidated damages in an amount equal to the value of anything received in breach of these Provisions, claim damages for all additional costs and expenses incurred in obtaining another contractor to complete performance under this contract, and debar and suspend Contractor from doing business with the Commonwealth. These rights and remedies are cumulative, and the use or non-use of any one shall not preclude the use of all or any other. These rights and remedies are in addition to those the Commonwealth may have under law, statute, regulation or otherwise.

## V.34 CONTRACT-029.1 Contractor Responsibility Provisions (Nov 2010)

For the purpose of these provisions, the term contractor is defined as any person, including, but not limited to, a bidder, offeror, loan recipient, grantee or lessor, who has furnished or performed or seeks to furnish or perform, goods, supplies, services, leased space, construction or other activity, under a contract, grant, lease, purchase order or reimbursement agreement with the Commonwealth of Pennsylvania (Commonwealth). The term contractor includes a permittee, licensee, or any agency, political subdivision, instrumentality, public authority, or other public entity in the Commonwealth.

1.  The Contractor certifies, in writing, for itself and its subcontractors required to be disclosed or approved by the Commonwealth, that as of the date of its execution of this Bid/Contract, that neither the Contractor, nor any such subcontractors, are under suspension or debarment by the Commonwealth or any governmental entity, instrumentality, or authority and, if the Contractor cannot so certify, then it agrees to submit, along with its Bid/Contract, a written explanation of why such certification cannot be made.

2.  The Contractor also certifies, in writing, that as of the date of its execution of this Bid/Contract it has no tax liabilities or other Commonwealth obligations, or has filed a timely administrative or judicial appeal if such liabilities or obligations exist, or is subject to a duly approved deferred payment plan if such liabilities exist.

3.  The Contractor's obligations pursuant to these provisions are ongoing from and after the effective date of the Contract through the termination date thereof. Accordingly, the Contractor shall have an obligation to inform the Commonwealth if, at any time during the term of the Contract, it becomes delinquent in the payment of taxes, or other Commonwealth obligations, or if it or, to the best knowledge of the Contractor, any of its subcontractors are suspended or debarred by the Commonwealth, the federal government, or any other state or governmental entity. Such notification shall be made within 15 days of the date of suspension or debarment.

4.  The failure of the Contractor to notify the Commonwealth of its suspension or debarment by the Commonwealth, any other state, or the federal government shall constitute an event of default of the Contract with the Commonwealth.

5.  The Contractor agrees to reimburse the Commonwealth for the reasonable costs of investigation incurred by the Office of State Inspector General for investigations of the Contractor's compliance

with the terms of this or any other agreement between the Contractor and the Commonwealth that results in the suspension or debarment of the contractor. Such costs shall include, but shall not be limited to, salaries of investigators, including overtime; travel and lodging expenses; and expert witness and documentary fees. The Contractor shall not be responsible for investigative costs for investigations that do not result in the Contractor's suspension or debarment.

6.  The Contractor may obtain a current list of suspended and debarred Commonwealth contractors by either searching the Internet at **http://www.dgs.state.pa.us/** or contacting the:

>   Department of General Services
>   Office of Chief Counsel
>   603 North Office Building
>   Harrisburg, PA 17125
>   Telephone No: (717) 783-6472
>   FAX No: (717) 787-9138

## V.35 CONTRACT-030.1 Americans with Disabilities Act (April 1, 2010)

a.  Pursuant to federal regulations promulgated under the authority of The Americans With Disabilities Act, 28C.F.R. Section 35.101 et seq., the Contractor understands and agrees that it shall not cause any individual with a disability to be excluded from participation in this Contract or from activities provided for under this Contract on the basis of the disability. As a condition of accepting this contract, the Contractor agrees to comply with the "General Prohibitions Against Discrimination," 28 C.F.R. Section 35.130, and all other regulations promulgated under Title II of The Americans With Disabilities Act which are applicable to all benefits, services, programs, and activities provided by the Commonwealth of Pennsylvania through contracts with outside contractors.

b.  The Contractor shall be responsible for and agrees to indemnify and hold harmless the Commonwealth of Pennsylvania from all losses, damages, expenses, claims, demands, suits, and actions brought by any party against the Commonwealth of Pennsylvania as a result of the Contractor's failure to comply with the provisions of Subparagraph a. above.

## V.36 CONTRACT-032.1 Covenant Against Contingent Fees (Oct 2006)

The Contractor warrants that no person or selling agency has been employed or retained to solicit or secure the Contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business. For breach or violation of this warranty, the Commonwealth shall have the right to terminate the Contract without liability or in its discretion to deduct from the Contract price or consideration, or otherwise recover the full amount of such commission, percentage, brokerage, or contingent fee.

## V.37 CONTRACT-033.1 Applicable Law (Oct 2006)

This Contract shall be governed by and interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania (without regard to any conflict of laws provisions) and the decisions of the Pennsylvania courts. The Contractor consents to the jurisdiction of any court of the Commonwealth of Pennsylvania and any federal courts in Pennsylvania, waiving any claim or defense that such forum is not

convenient or proper. The Contractor agrees that any such court shall have *in personam* jurisdiction over it, and consents to service of process in any manner authorized by Pennsylvania law.

## V.38 CONTRACT- 034.1b Integration (Nov 30 2006)

This Contract constitutes the entire agreement between the parties. No agent, representative, employee or officer of either the Commonwealth or the Contractor has authority to make, or has made, any statement, agreement or representation, oral or written, in connection with the Contract, which in any way can be deemed to modify, add to or detract from, or otherwise change or alter its terms and conditions. No negotiations between the parties, nor any custom or usage, shall be permitted to modify or contradict any of the terms and conditions of the Contract. No modifications, alterations, changes, or waiver to the Contract or any of its terms shall be valid or binding unless accomplished by a written amendment signed by both parties.

## V.40 CONTRACT-034.3 Controlling Terms and Conditions (Aug 2011)

The terms and conditions of this Contract shall be the exclusive terms of agreement between the Contractor and the Commonwealth. All quotations requested and received from the Contractor are for obtaining firm pricing only. Other terms and conditions or additional terms and conditions included or referenced in the Contractor's quotations, invoices, business forms, or other documentation shall not become part of the parties' agreement and shall be disregarded by the parties, unenforceable by the Contractor and not binding on the Commonwealth.

## V.41 CONTRACT-035.1a Changes (Oct 2006)

The Commonwealth reserves the right to make changes at any time during the term of the Contract or any renewals or extensions thereof: 1) to increase or decrease the quantities resulting from variations between any estimated quantities in the Contract and actual quantities; 2) to make changes to the services within the scope of the Contract; 3) to notify the Contractor that the Commonwealth is exercising any Contract renewal or extension option; or 4) to modify the time of performance that does not alter the scope of the Contract to extend the completion date beyond the Expiration Date of the Contract or any renewals or extensions thereof. Any such change shall be made by the Contracting Officer by notifying the Contractor in writing. The change shall be effective as of the date of the change, unless the notification of change specifies a later effective date, and mutual written agreement between the parties. Such increases, decreases, changes, or modifications will not invalidate the Contract, nor, if performance security is being furnished in conjunction with the Contract, release the security obligation. The Contractor agrees to provide the service in accordance with the mutually agreeable change order. Any dispute by the Contractor in regard to the performance required by any notification of change shall be first discussed in good faith between the parties to reach an agreement. However, if after such discussions, the dispute shall be handled through Contract Controversies Provision of this Contract. Any requests for changes from the Contractor shall be submitted to the Commonwealth for review and follow the same process identified above.

## V.42 CONTRACT-036.1 Background Checks (February 2016)

a.   The Contractor must, at its expense, arrange for a background check for each of its employees, as well as the employees of any of its subcontractors, who will have access to Commonwealth facilities, either through on-site access or through remote access. Background checks are to be conducted via the Request for Criminal Record Check form and procedure found at

http://www.psp.state.pa.us/psp/lib/psp/sp4-164.pdf . The background check must be conducted prior to initial access and on an annual basis thereafter.

b.   Before the Commonwealth will permit access to the Contractor, the Contractor must provide written confirmation that the background checks have been conducted. If, at any time, it is discovered that a Contractor employee has a criminal record that includes a felony or misdemeanor involving terroristic behavior, violence, use of a lethal weapon, or breach of trust/fiduciary responsibility or which raises concerns about building, system or personal security or is otherwise job-related, the Contractor shall not assign that employee to any Commonwealth facilities, shall remove any access privileges already given to the employee and shall not permit that employee remote access unless the Commonwealth consents to the access, in writing, prior to the access. The Commonwealth may withhold its consent in its sole discretion. Failure of the Contractor to comply with the terms of this Section on more than one occasion or Contractor's failure to appropriately address any single failure to the satisfaction of the Commonwealth may result in the Contractor being deemed in default of its Contract.

c.   The Commonwealth specifically reserves the right of the Commonwealth to conduct background checks over and above that described herein.

d.   Access to certain Capitol Complex buildings and other state office buildings is controlled by means of card readers and secured visitors' entrances. Commonwealth contracted personnel who have regular and routine business in Commonwealth worksites may be issued a photo identification or access badge subject to the requirements of the contracting agency and DGS set forth in Enclosure 3 of Commonwealth Management Directive 625.10 (Amended) Card Reader and Emergency Response Access to Certain Capitol Complex Buildings and Other State Office Buildings. The requirements, policy and procedures include a processing fee payable by the Contractor for contracted personnel photo identification or access badges.

## V.43 CONTRACT-037.1a Confidentiality (Oct 2013)

(a)  The Contractor agrees to protect the confidentiality of the Commonwealth's confidential information. The Commonwealth agrees to protect the confidentiality of Contractor's confidential information. In order for information to be deemed confidential, the party claiming confidentiality must designate the information as "confidential" in such a way as to give notice to the other party (notice may be communicated by describing the information, and the specifications around its use or disclosure, in the SOW). Neither party may assert that information owned by the other party is such party's confidential information. The parties agree that such confidential information shall not be copied, in whole or in part, or used or disclosed except when essential for authorized activities under this Contract and, in the case of disclosure, where the recipient of the confidential information has agreed to be bound by confidentiality requirements no less restrictive than those set forth herein. Each copy of such confidential information shall be marked by the party making the copy with any notices appearing in the original. Upon termination or cancellation of this Contract or any license granted hereunder, the receiving party will return to the disclosing party all copies of the confidential information in the receiving party's possession, other than one copy, which may be maintained for archival purposes only, and which will remain subject to this Contract's security, privacy, data retention/destruction and confidentiality provisions (all of which shall survive the expiration of this Contract). Both parties agree that a material breach of these requirements may, after failure to cure within the time frame specified in this Contract, and at the discretion of the non-breaching party, result in termination for default pursuant to the DEFAULT provision of this Contract, in addition to other remedies available to the non-breaching party.

(b) Insofar as information is not otherwise protected by law or regulation, the obligations stated in this Section do not apply to information:

    (1) already known to the recipient at the time of disclosure other than through the contractual relationship;

    (2) independently generated by the recipient and not derived by the information supplied by the disclosing party.

    (3) known or available to the public, except where such knowledge or availability is the result of unauthorized disclosure by the recipient of the proprietary information;

    (4) disclosed to the recipient without a similar restriction by a third party who has the right to make such disclosure; or

    (5) required to be disclosed by law, regulation, court order, or other legal process.

(c) There shall be no restriction with respect to the use or disclosure of any ideas, concepts, know-how, or data processing techniques developed alone or jointly with the Commonwealth in connection with services provided to the Commonwealth under this Contract.

(d) The Contractor shall use the following process when submitting information to the Commonwealth it believes to be confidential and/or proprietary information or trade secrets:

    (1) Prepare an un-redacted version of the appropriate document, and

    (2) Prepare a redacted version of the document that redacts the information that is asserted to be confidential or proprietary information or a trade secret, and

    (3) Prepare a signed written statement that states:

        (i) the attached document contains confidential or proprietary information or trade secrets;

        (ii) the Contractor is submitting the document in both redacted and un-redacted format in accordance with 65 P.S. § 67.707(b); and

        (iii) the Contractor is requesting that the document be considered exempt under 65 P.S. § 67.708(b)(11) from public records requests.

    (4) Submit the two documents along with the signed written statement to the Commonwealth.

## V.44 CONTRACT-037.2a Sensitive Information (Sept 2009)

The Contractor shall not publish or otherwise disclose, except to the Commonwealth and except matters of public record, any information or data obtained hereunder from private individuals, organizations, or public agencies, in a publication whereby the information or data furnished by or about any particular person or establishment can be identified, except with the consent of such person or establishment. The parties shall not use or disclose any information about a recipient receiving services from, or otherwise enrolled in, a Commonwealth program affected by or benefiting from services under this Contract for any purpose not connected with the parties' Contract responsibilities except with the written consent of such recipient, recipient's attorney, or recipient's parent or guardian pursuant to applicable state and federal law and regulations.

Contractor will be responsible to remediate any improper disclosure of information. Such remediation may include, but not be limited to, credit monitoring for individuals for whom information has been released and reimbursement of any costs incurred by individuals for whom information has been released.

## V.45  CONTRACT-037.2b  Health  Insurance  Portability  and  Accountability  Act  (HIPAA) Compliance (Oct 2013)

The Health Insurance Portability and Accountability Act (HIPAA) Compliance requirements are set forth in Attachment 1 to the Statement of Work hereto as Exhibit B to the Contract.

## V.46 CONTRACT-045.1 Insurance - General (Dec 12 2006)

The Contractor is required to have in place during the term of the Contract and any renewals or extensions thereof , the following types of insurance, issued by companies acceptable to the Commonwealth and authorized to conduct such business under the laws of the Commonwealth of Pennsylvania:

A. **Worker's Compensation Insurance** for all of the Contractor's employees and those of any subcontractor, engaged in work at the site of the project as required by law.

B. **Public Liability and Property Damage Insurance** to protect the Commonwealth, the Contractor, and any and all subcontractors from claims for damages for personal injury (including bodily injury), sickness or disease, accidental death and damage to property including the loss of use resulting from any property damage, which may arise from the activities performed under the Contract or the failure to perform under the Contract, whether such performance or non-performance be by the Contractor, by any subcontractor, or by anyone directly or indirectly employed by either. The minimum amounts of coverage shall be $250,000 per person and $1,000,000 per occurrence for bodily injury, including death, and $250,000 per person and $1,000,000 per occurrence for property damage. Such policies shall be occurrence rather than claims-made policies and shall not contain any endorsements or any other form designated to limit and restrict any action by the Commonwealth, as an additional insured, against the insurance coverage in regard to work performed for the Commonwealth.

Prior to commencement of the work under the Contract and at each insurance renewal date during the term of the Contract, the Contractor shall provide the Commonwealth with current certificates of insurance. These certificates or policies shall name the Commonwealth as an additional insured and shall contain a provision that the coverage's afforded under the policies will not be cancelled or changed until at least thirty (30) days written notice has been given to the Commonwealth. Failure by the Commonwealth to obtain the certificates shall not be deemed a waiver of the Contractor's obligation to obtain and furnish certificates. The Commonwealth shall have the right to inspect the original insurance policies. An umbrella or excess liability insurance policy may be used to supplement the Contractor's policy limits to satisfy the full policy limits required by the Contract.

## V.47 CONTRACT-051.1 Notice (Dec 2006)

Any written notice to any party under this Contract shall be deemed sufficient if delivered personally, or by facsimile, telecopy, electronic or digital transmission (provided such delivery is confirmed), or by a recognized overnight courier service (e.g., DHL, Federal Express, etc.) with confirmed receipt, or by certified or registered United States mail, postage prepaid, return receipt requested, and sent to following:

    a. If to the Contractor:  the Contractor's address as recorded in the Commonwealth's Supplier Registration system.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

b.  If to the Commonwealth:  the address of the Issuing Office as set forth on the Contract.

**V.48 CONTRACT-052.1 Right to Know Law (Feb 2010)**

a.  The Pennsylvania Right-to-Know Law, 65 P.S. §§ 67.101-3104, ("RTKL") applies to this Contract. For the purpose of these provisions, the term "the Commonwealth" shall refer to the contracting Commonwealth agency.

b.  If the Commonwealth needs the Contractor's assistance in any matter arising out of the RTKL related to this Contract, it shall notify the Contractor using the legal contact information provided in this Contract. The Contractor, at any time, may designate a different contact for such purpose upon reasonable prior written notice to the Commonwealth.

c.  Upon written notification from the Commonwealth that it requires the Contractor's assistance in responding to a request under the RTKL for information related to this Contract that may be in the Contractor's possession, constituting, or alleged to constitute, a public record in accordance with the RTKL ("Requested Information"), the Contractor shall:

1. Provide the Commonwealth, within ten (10) calendar days after receipt of written notification, access to, and copies of, any document or information in the Contractor's possession arising out of this Contract that the Commonwealth reasonably believes is Requested Information and may be a public record under the RTKL; and

2. Provide such other assistance as the Commonwealth may reasonably request, in order to comply with the RTKL with respect to this Contract.

d.  If the Contractor considers the Requested Information to include a request for a Trade Secret or Confidential Proprietary Information, as those terms are defined by the RTKL, or other information that the Contractor considers exempt from production under the RTKL, the Contractor must notify the Commonwealth and provide, within seven (7) calendar days of receiving the written notification, a written statement signed by a representative of the Contractor explaining why the requested material is exempt from public disclosure under the RTKL.

e.  The Commonwealth will rely upon the written statement from the Contractor in denying a RTKL request for the Requested Information unless the Commonwealth determines that the Requested Information is clearly not protected from disclosure under the RTKL. Should the Commonwealth determine that the Requested Information is clearly not exempt from disclosure, the Contractor shall provide the Requested Information within five (5) business days of receipt of written notification of the Commonwealth's determination.

f.  If the Contractor fails to provide the Requested Information within the time period required by these provisions, the Contractor shall indemnify and hold the Commonwealth harmless for any damages, penalties, costs, detriment or harm that the Commonwealth may incur as a result of the Contractor's failure, including any statutory damages assessed against the Commonwealth.

g.  The Commonwealth will reimburse the Contractor for any costs associated with complying with these provisions only to the extent allowed under the fee schedule established by the Office of Open Records or as otherwise provided by the RTKL if the fee schedule is inapplicable.

h.  The Contractor may file a legal challenge to any Commonwealth decision to release a record to the public with the Office of Open Records, or in the Pennsylvania Courts, however, the Contractor shall indemnify the Commonwealth for any legal expenses incurred by the

Commonwealth as a result of such a challenge and shall hold the Commonwealth harmless for any damages, penalties, costs, detriment or harm that the Commonwealth may incur as a result of the Contractor's failure, including any statutory damages assessed against the Commonwealth, regardless of the outcome of such legal challenge. As between the parties, the Contractor agrees to waive all rights or remedies that may be available to it as a result of the Commonwealth's disclosure of Requested Information pursuant to the RTKL.

i. The Contractor's duties relating to the RTKL are continuing duties that survive the expiration of this Contract and shall continue as long as the Contractor has Requested Information in its possession.

## V.49 CONTRACT-053.1 Enhanced Minimum Wage Provisions (July 2018)

1. **Enhanced Minimum Wage.** Contractor/Lessor agrees to pay no less than $12.00 per hour to its employees for all hours worked directly performing the services called for in this Contract/Lease, and for an employee's hours performing ancillary services necessary for the performance of the contracted services or lease when such employee spends at least twenty per cent (20%) of their time performing ancillary services in a given work week.

2. **Adjustment.** Beginning July1, 2019, and annually thereafter, the minimum wage rate shall be increased by $0.50 until July 1, 2024, when the minimum wage reaches $15.00. Thereafter, the minimum wage rate would be increased by an annual cost-of-living adjustment using the percentage change in the Consumer Price Index for All Urban Consumers (CPI-U) for Pennsylvania, New Jersey, Delaware, and Maryland. The applicable adjusted amount shall be published in the Pennsylvania Bulletin by March 1 of each year to be effective the following July 1.

3. **Exceptions.**        These Enhanced Minimum Wage Provisions shall not apply to employees:

   a. exempt from the minimum wage under the Minimum Wage Act of 1968;

   b. covered by a collective bargaining agreement;

   c. required to be paid a higher wage under another state or federal law governing the services, including the Prevailing Wage Act and Davis-Bacon Act; or

   d. required to be paid a higher wage under any state or local policy or ordinance.

4. **Notice.** Contractor/Lessor shall post these Enhanced Minimum Wage Provisions for the entire period of the contract conspicuously in easily-accessible and well-lighted places customarily frequented by employees at or near where the contracted services are performed.

5. **Records.** Contractor/Lessor must maintain and, upon request and within the time periods requested by the Commonwealth, furnish all employment and wage records necessary to document compliance with these Enhanced Minimum Wage Provisions.

6. **Sanctions.** Failure to comply with these Enhanced Minimum Wage Provisions may result in the imposition of sanctions, which may include, but shall not be limited to, termination of the contract or lease, **nonpayment**, debarment or referral to the Office of General Counsel for appropriate civil or criminal referral.

7. **Subcontractors.** Contractor/Lessor shall include the provisions of these Enhanced Minimum Wage Provisions in every subcontract so that these provisions will be binding upon each subcontractor.

**EXHIBIT B**

**STATEMENT OF WORK**

**COVID-19 CONTACT TRACING STAFFING SERVICES**

I.    Task and Timelines

A.  The Contractor shall help to decrease the spread of COVID-19 and contribute to
Pennsylvania's workforce through the recruitment, onboarding, training, and development of
a remote contact tracing staff throughout the Commonwealth from August 1, 2020 or the
Contract start date, whichever is later, through December 31, 2020.

B.  The Contractor shall provide a remote contact tracing workforce within the Commonwealth
from August 1, 2020 or the Contract start date, whichever is later, through December 31,
2020 by provisioning the following resources and capabilities to individuals within 5 calendar
days of their hiring date.
 i.  Contractor shall deploy computing devices for the term of the Contract, with
encrypted hard drives, disabled read/write capabilities, antivirus software, and USB
headsets.
 ii.  Contractor shall provide high-speed internet connectivity to provide stable access
throughout the term of the Contract.
 iii.  Contractor shall use personnel management system for daily operations ensuring
reporting and integration with any contact management system utilized by the
Pennsylvania Department of Health ("DOH").
 iv.  Contractor recognizes and accepts that the contact tracing workforce will have access
to personal health information of contact tracing subjects and must ensure that and all
other such information related to the services being provided must be kept
confidential and secure.

C.  The Contractor shall rapidly scale resources, training, and infrastructure to accommodate the
need of contact tracing staff as designated by the Commonwealth throughout the term of the
Contract or through December 31, 2020.
 i.  There is no minimum-required number of staff to engage with the Contractor.
 ii.  Total Contact Tracers can be increased or decreased throughout the term of the
Contract, with the Contractor providing recommendations to the DOH based on
throughput, performance management, and forecasting on a regular basis. This
ongoing reporting will assist the Contractor and DOH to adjust timelines, total
numbers of resources needed, add or remove training criteria, and make other
adjustments to meet program objectives. Any such adjustments shall be accepted in
writing by the Contractor and DOH within 10 days of receipt and shall be reflected in
the project plan. In the event the adjustments are not mutually accepted by either
party within that 10-day period, the parties will meet to review the suggested
adjustments and mutually resolve any concerns.
 iii.  The  Contractor shall work with the DOH to tailor operating hours to specific needs,
accommodating changes in coverage to address specific event-related demand cycles.
 iv.  The Contractor shall work with the DOH to quickly mobilize a staffing program in
order to best meet the following estimated timelines:

1

a. By August 3rd, or within 21 days of work beginning, the Contractor shall onboard the Operations and Training Team Members from the Program Leadership Team, as designated by DOH and Contractor.

b. By August 10, or within 28 days of work beginning, the Contractor shall onboard the first round of supervisors and care resource managers, as designated by DOH and Contractor.

c. By August 17, or within 35 days of work beginning, the Contractor shall onboard 250 contact tracing staff team members.

d. After the initial 250 contact tracing staff members are hired, additional resources will be hired every two weeks or on a timeline as designated by DOH and Contractor. The expected onboarding of additional resources will not exceed the rate of 1,000 resources per 6-week period.

e. Any deviations from this schedule will be addressed by the change provisions in Paragraph V.41 of Exhibit A.

D. The Contractor shall fully manage all aspects as defined herein of the contact tracing staffing solution from August 1, 2020 or the Contract start date, whichever is later, through December 31, 2020 with a team which includes operational and program leadership, supervisors, and dedicated trainers.

  a. As part of this solution, the Contractor shall provide a Program Leadership Team to manage resource performance, adherence and training, continual improvement, and overall program supervision.

  b. The Contractor shall offer a comprehensive deployment of resources to support the needs of the program from August 1, 2020 or the Contract start date, whichever is later, through December 31, 2020.

  c. The Program Leadership Team is estimated to be comprised of the following positions in order to accommodate the estimated maximum number of contact tracers (4,000):
      i. Up to one (1) Dedicated Program Manager
      ii. Up to seventy-five (75) Dedicated Recruiters
      iii. Up to four thousand (4000) Contact Tracers
      iv. Up to eight (8) Operations Managers
      v. Up to eight (8) Resource Managers
      vi. Up to eighty (80) Supervisors
      vii. Up to forty (40) Social Support Coordinators
      viii. Up to five (5) Trainers
      ix. Up to one (1) Business Intelligence / Reporting Specialist

  d. After the maximum number of contact tracers has been reached (4,000), PA DOH and the Contractor will determine a plan to obtain any additional resources required.

  e. As the support program is launched and real-time information can be assessed, the Contractor shall more closely collaborate with DOH on the optimal support ratio to provide the optimal levels of service with the most reasonable support team proportions

  f. The Program Leadership Team shall be responsible for monitoring that procedures are trained and understood, services are delivered in a consistent and compliant

        method, and all documentation requirements satisfy both accuracy and completeness goals, as defined in this Statement of Work.

g.  The Program Leadership Team shall work collaboratively with DOH staff to provide a program that is responsive to DOH needs. The Program Leadership Team and DOH will work together to establish supervision responsibilities required from both parties for contact tracing team members.

h.  The Program Leadership Team shall engage with DOH and ensure that all COVID training contents are shared with contact tracing staff team, including those that are designated by DOH as mandatory for contact tracers. This engagement may include the following:

        a. Mandatory DOH Training on Contact Tracing

        b. Ongoing mandatory DOH Training on Contact Tracing

        c. DOH training on Sara Alert and other contact management systems in operation

        d. DOH training on engaging with vulnerable communities and individuals who have faced trauma

        e. DOH training on the collection of Sexual Orientation and Gender Identity (SOGI) data, racial and ethnic identity data, and other sensitive information

For the avoidance of doubt, in no event will Contractor be required to develop COVID-specific training contents. All COVID-specific training requirements, guidelines, and materials will be provided by the DOH.

E.  The Contractor shall work closely with DOH to implement a comprehensive recruitment effort that is focused on outreach to displaced employees, including first responders and healthcare workers, and underserved communities as designated by DOH or agencies with which it is affiliated. DOH will provide information on individuals or entities that could be prioritized for recruitment efforts. These efforts shall continue, as needed, to fulfill the needs of the contact tracing program, from August 1, 2020 or the Contract start date, whichever is later, through December 31, 2020.

- Contractor's recruiting efforts shall focus on screening and hiring of talent exclusively within the Commonwealth of Pennsylvania, directing vital and meaningful employment to the communities being supported by DOH with Contact Tracers from within those same areas.

- The Contractor shall work with DOH to monitor that all practices align with DOH's established commitment to non-discriminatory and inclusionary practices.

- Contractor agrees to focus its best recruiting efforts to hire according to the terms herein. The DOH acknowledges and agrees however that Contractor is not held to exclusively hiring from the specified populations to allow Contractor to meet the required staffing needs of the DOH. Contractor shall document efforts to recruit and hire from the specified populations and include such efforts in the weekly acceptance reports set forth in II.A Acceptance of this Statement of Work.

F.  The Contractor shall engage with DOH to understand entire workflow and operational environment while helping identify opportunities to add value to existing operations through additional Contact Tracer capacity, training scenarios, or complimentary / transferrable services.

G.  The Contractor shall prioritize team member involvement, commitment, and development through continuous feedback, coaching and reinforcement -- starting at the beginning of the process in August 1, 2020 or the Contract start date, whichever is later, and continuing through December 31, 2020.

II.  Acceptance

A.  The Commonwealth will review a report provided each week by Contractor summarizing the hours worked by each resource. On a weekly basis, the Commonwealth will provide written acceptance of the report. By providing written acceptance of the report, the Commonwealth provides acceptance for all work performed towards the scope of the entire project during these hours. The parties agree this shall be the sole acceptance criteria for this Statement of Work.

III.  Term

A.  This Statement of Work is effective as of the Effective Date of the Contract, as set forth in the Contract Terms and Conditions, Exhibit A to the Contract, and shall terminate on December 31, 2020 unless otherwise agreement upon by the parties in writing.  This contract will have the option for one additional three- month renewal and one additional four-month renewal.

IV.  Fees

A.  The Contractor will be compensated on a Time and Materials ("**T&M**") basis for the services outlined in this Statement of Work. The Commonwealth will remit payment for all hours worked in accordance with the chart below. The Contractor will invoice the Commonwealth on a weekly basis for all hours worked and the Commonwealth shall remit payment to the Contractor in accordance with Paragraph V.19 of the Terms and Conditions (Payment) as set forth in Exhibit A to this Contract.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A
Emergency Purchase Order 4300668050

| Insight Global Managed Services Pandemic Contact Tracing Proposed Roles and Rates | | | | |
|---|---|---|---|---|
| Resource Count (*Up to) | Pennsylvania Based Resources | | 5-Month Term | |
| | Role Title | Hourly Bill Rate | Estimated Total Hours | Estimated Total Cost |
| 1 | Program Manager | No Charge | 832 | $0.00 |
| 75 | Dedicated Recruiter | No Charge | 26400 | $0.00 |
| 2 | Operations Manager | $86.95 | 1664 | $144,684.80 |
| 2 | Resource Manager | $47.43 | 1664 | $78,923.52 |
| 20 | Supervisor | $37.52 | 16640 | $624,332.80 |
| 250 | Contact Tracer - Wave 1 | $31.65 | 198000 | $6,266,700.00 |
| 250 | Contact Tracer - Wave 2 | $31.65 | 178000 | $5,633,700.00 |
| 250 | Contact Tracer - Wave 3 | $31.65 | 160000 | $5,064,000.00 |
| 250 | Contact Tracer - Wave 4 | $31.65 | 140000 | $4,431,000.00 |
| 10 | Social Support Coordinator | $47.43 | 8320 | $394,617.60 |
| 2 | Trainer | $44.26 | 4160 | $184,121.60 |
| 1 | BI / Reporting | $94.85 | 832 | $78,915.20 |
| Estimated Program Total: | | | | $22,900,995.52 |

[Table assumes start date of August 10, 2020 for Management, Supervisor, Social Support Coordinator, Trainer and BI / Reporting roles, and start date of August 17, 2020 for Contact Tracer Wave 1, followed by Waves 2 – 4 each subsequent two weeks, for service through Wednesday, January 6, 2021]

V.    Conversion

A. If the Commonwealth, directly or indirectly hires, employs, or otherwise engages any Contractor resource performing work for the Commonwealth under this Statement of Work prior to the Contractor resource completing ninety (90) days of continuous service, the Commonwealth shall pay to the Contractor a placement fee of twenty-five percent (25%) of the Contractor resource's expected annual salary upon hire.

VII. Limitation of Liability

A. In no event will either party to this Contract be liable for incidental, consequential, punitive, indirect or special damages, including, without limitation, interruption or loss of business, profit or goodwill. In no event shall Contractor's liability to the Commonwealth exceed twenty million dollars ($20,000,000), whether arising from an alleged breach of this Contract, an alleged tort or any other cause of action.

VII. Assumptions

A. Should any Contractor resource work over forty (40) hours per week and Contractor is legally responsible to provide overtime compensation to the resource, overtime will be billed to the

Commonwealth at a rate of one and a half (1.5) times over the standard bill rate.  Contract shall make all efforts to ensure that overtime is limited.  All overtime must be included in the weekly acceptance report.

B. Contractor shall be compensated by the Commonwealth for such reasonable and necessary travel and expenses as necessary for performance of this Contract in accordance with Commonwealth Policy.

VIII.    Attachments

This Statement of Work incorporates the DOH HIPAA requirements as Attachment 1 to this Exhibit B.

**COMMONWEALTH OF PENNSYLVANIA
BUSINESS ASSOCIATE APPENDIX**

**Health Insurance Portability and Accountability Act (HIPAA) Compliance**

**WHEREAS, the Pennsylvania Department of Health (Covered Entity)** and the **Contractor (Business Associate),** intend to protect the privacy and provide for the security of certain Protected Health Information (PHI) to which Business Associate may have access in order to provide goods or services to or on behalf of Covered Entity, in accordance with the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (HIPAA), the Health Information Technology for Economic and Clinical Health (HITECH) Act of 2009, Public Law 111-5, the HIPAA Privacy Rule (Privacy Rule) modifying 45 CFR Parts 160 and 164, and the HIPAA Security Rule (Security Rule), modifying 45 CFR Parts 160, 162 and 164.

**WHEREAS,** Business Associate may receive PHI in any format including electronic form, from Covered Entity, or may create or obtain PHI from other parties for use on behalf of Covered Entity, which PHI must be handled, disclosed or used only in accordance with this Agreement, and the standards established by the HIPAA Rules.

**NOW, THEREFORE,** Covered Entity and Business Associate agree as follows:

1. **Definitions.** The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules: Breach, Data Aggregation, Designated Record Set, Disclosure, Health Care Operations, Individual, Minimum Necessary, Notice of Privacy Practices, Protected Health Information (PHI), Required By Law, Secretary, Security Incident, Subcontractor, Unsecured Protected Health Information, and Use.

   <u>**Specific Definitions:**</u>

   a. **"Business Associate"** shall have the same meaning as the term "business associate" at 45 CFR §160.103.
   b. **"Covered Entity"** shall have the same meaning as the term "covered entity" at 45 CFR §160.103.
   c. **"HIPAA Rules"** shall mean the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Part 160 and 164.

2. **Changes in Law.** Business Associate agrees that it will comply with any changes in the HIPAA Rules by the compliance date established by any such changes and will provide the Covered Entity with written certification of such compliance.

3. **Stated Purposes For Which Business Associate May Use Or Disclose PHI.** Except as otherwise limited in this Agreement, Business Associate shall be permitted to use or disclose PHI provided by or obtained by or obtained on behalf of Covered Entity to perform those functions, activities, or services for, or on behalf of, Covered Entity which are specified in this contract's Appendix A (Statement of Work), provided that such use or disclosure would not violate the HIPAA Rules if done by Covered Entity. Business Associate agrees to make uses, disclosures and requests for PHI consistent with Covered Entity's minimum policies and procedures.

4. **Additional Purposes For Which Business Associate May Use Or Disclose Information.** Business Associate shall not use or disclose PHI provided by, or created or obtained on behalf of Covered Entity for any other purposes except as required by law. Business Associate shall not use PHI to de-identify the information in accordance with 45 CFR 164.514(a)-(c) without the Department's express written authorization(s). Business Associate may use PHI for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate.

**5.** **Business Associate Obligations:**

a. **Limits On Use And Further Disclosure Established By Appendix And Law.** Business Associate hereby agrees that the PHI provided by, or created or obtained on behalf of Covered Entity shall not be further used or disclosed other than as permitted or required by this Agreement, Appendix A or as required by law.

b. **Appropriate Safeguards.** Business Associate shall establish and maintain appropriate safeguards to prevent any use or disclosure of PHI other than as provided for by this Agreement that reasonably and appropriately protect the confidentiality, integrity, and availability of the PHI that is created, received, maintained, or transmitted on behalf of the Covered Entity as required by Subpart C of 45 CFR Part 164. Appropriate safeguards shall include but are not limited to implementing:

   i.   administrative safeguards required by 45 CFR 164.308,
   ii.  physical safeguards as required by 45 CFR 164.310,
   iii. technical safeguards as required by 45 CFR 164.312, and,
   iv.  policies and procedures and document requirements as required by 45 CFR  164.316.

c. **Training and Guidance.** Business Associate shall provide annual training to relevant employees, contractors and subcontractors on how to prevent the improper use or disclosure of PHI. Business Associate shall also comply with annual guidance on the most effective and appropriate technical safeguards issued by the Secretary of Health and Human Services.

d. **Reports Of Improper Use Or Disclosure or Breach.** Business Associate hereby agrees that it shall notify the Department's Project Officer and the Department's Legal Office within two (2) days of discovery of any use or disclosure of PHI not provided for or allowed by this Agreement, including breaches of unsecured PHI as required by 45 CFR 164.410. Such notification shall be written and shall include the identification of each individual whose unsecured PHI has been, or is reasonably believed by the Business Associate to have been, accessed, acquired, or disclosed during the improper use or disclosure or Breach. Business Associate shall furnish Covered Entity with any other available information that Covered Entity is required to include in its notification to individuals under 45 CFR 164.404(c) at the time of Business Associate's notification to Covered Entity or promptly thereafter as such information becomes available. An improper use or disclosure or Breach shall be treated as discovered by the Business Associate on the first day on which it is known to the Business Associate (including any person, other than the individual committing the breach, that is an employee, officer, or other agent of the Business Associate) or should reasonably have been known to the Business Associate to have occurred.

   Business Associate Agrees that if any of its employees, agents, subcontractors, and representatives use or disclose PHI received from, or created or received on behalf of, Covered Entity, or any derivative de-identified information in a manner not provided for in this Agreement, Business Associate shall ensure that such employees, agents, subcontractors, and business representatives shall receive training on Business Associate's procedure for compliance with the HIPAA Rules, or shall be sanctioned or prevented from accessing any PHI Business Associate receives from, or creates or receives on behalf of Covered Entity. Continued use of PHI in a manner contrary to the terms of this Agreement shall constitute a material breach of this Agreement.

e. **Subcontractors And Agents.** In accordance with 45 CFR 164.502(e)(1)(ii) and 164.308(b)(2), if applicable, ensure that any subcontractors and agents that create, receive, maintain, or transmit PHI on behalf of the Business Associate agree to the same restrictions, conditions, and requirements that apply to the Business Associate with respect to such information.

f. **Reports Of Security Incidents.** Business Associate hereby agrees that it shall notify, in writing, the Department's Project Officer within two (2) days of discovery of any Security Incident at the

time of Business Associate's notification to Covered Entity or promptly thereafter as such information becomes available.

g.   **Right Of Access To PHI.**  Business Associate hereby agrees to allow an individual who is the subject of PHI maintained in a designated record set, to have access to and copy that individual's PHI within ten (10) business days of receiving a written request from the Covered Entity or an authorized individual in accordance with the HIPAA Rules.  Business Associate shall provide PHI in the format requested, unless it cannot readily be produced in such format, in which case it shall be provided in standard hard copy.  If any individual requests from Business Associate or its agents or subcontractors access to PHI, Business Associate shall notify Covered Entity of same within five (5) business days.  Business Associate shall further conform with and meet all of the requirements of 45 CFR 164.524.

h.   **Amendment And Incorporation Of Amendments.**  Within five (5) business days of receiving a request from Covered Entity or from the individual for an amendment of PHI maintained in a designated record set, Business Associate shall make the PHI available to the Covered Entity and incorporate the amendment to enable Covered Entity to comply with 45 CFR 164.526.  If any individual requests an amendment from Business Associate or its agents or subcontractors, Business Associate shall notify Covered Entity of same within five (5) business days.

i.   **Provide Accounting Of Disclosures.**  Business Associate agrees to maintain a record of all disclosures of PHI in accordance with 45 CFR 164.528. Such records shall include, for each disclosure, the date of the disclosure, the name and address of the recipient of the PHI, a description of the PHI disclosed, the name of the individual who is the subject of the PHI disclosed, the purpose of the disclosure, and shall include disclosures made on or after the date which is six (6) years prior to the request.  Business Associate shall make such record available to the individual or the Covered Entity within ten (10) business days of a request for an accounting of disclosures and in accordance with 45 CFR  164.528.

j.   **Access To Books And Records.**  Business Associate hereby agrees to make its internal practices, books, and records relating to the use or disclosure of PHI received from, or created or received by Business Associate on behalf of the Covered Entity, available to the Covered Entity and the Secretary of Health and Human Services or designee for purposes of determining compliance with the HIPAA Rules.

k.   **Return Or Destruction Of PHI.**  At termination of this Agreement, Business Associate hereby agrees to return or destroy all PHI provided by or obtained on behalf of Covered Entity. Business Associate agrees not to retain any copies of the PHI after termination of this Agreement.  If return or destruction of the PHI is not feasible, Business Associate agrees to extend the protections of this Agreement to limit any further use or disclosure until such time as the PHI may be returned or destroyed.  If Business Associate elects to destroy the PHI, it shall certify to Covered Entity that the PHI has been destroyed.

l.   **Maintenance of PHI.**  Notwithstanding section 4(k) of this Appendix, Business Associate and its subcontractors or agents shall retain all PHI throughout the term of the Agreement and shall continue to maintain the information required under section 4(h) of this Appendix for a period of six (6) years after termination of the Agreement, unless Covered Entity and Business Associate agree otherwise.

m.   **Mitigation Procedures.**  Business Associate agrees to establish and to provide to Covered Entity upon request, procedures for mitigating, to the maximum extent practicable, any harmful effect from the use or disclosure of PHI in a manner contrary to this Agreement or the HIPAA Rules. Business Associate further agrees to mitigate any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of this Appendix or the Privacy Rule.

n. **Sanction Procedures.** Business Associate agrees that it shall develop and implement a system of sanctions for any employee, subcontractor, or agent who violates this Appendix or the HIPAA Rules.

o. **Application of Civil and Criminal Penalties.** All Civil and Criminal Penalties under the HIPAA Rules shall apply to Business Associate's violation of any security provision contained in the HIPAA Rules.

p. **Breach Notification.**   Business Associate shall comply with the Breach notification requirements of 45 CFR 164. In the event that Business Associate discovers a Breach, Covered Entity may elect to directly comply with Breach notification requirements or require Business Associate to comply with all Breach notifications requirements of 45 CFR 164 on behalf of Covered Entity. If Covered Entity requires Business Associate to comply with Breach notification requirements, Business Associate shall provide Covered Entity with a detailed weekly, written report, starting one week following discovery of the Breach.   The report shall include, at a minimum, Business Associate's progress regarding Breach notification and mitigation of the Breach.  If Covered Entity elects to directly meet the requirements of 45 CFR 164, Business Associate shall be financially responsible to Covered Entity for all resulting costs and fees incurred by Covered Entity, including, but not limited to, labor, materials, or supplies.  Covered Entity may at its sole option: 1) offset amounts otherwise due and payable to Business Associate under this Agreement; or 2) seek reimbursement of or direct payment to a third party of Covered Entity's costs and fees incurred under this paragraph, Business Associate shall make payment to Covered Entity (or a third party as applicable) within thirty (30) days from the date of Covered Entity's written notice to Business Associate.

q. **Grounds For Breach.** Any non-compliance by Business Associate with this Appendix or the HIPAA Rules will automatically be considered to be a breach of the Agreement.

r. **Termination by Commonwealth.** Business Associate authorizes termination of this Agreement by the Commonwealth if the Commonwealth determines, in its sole discretion that the Business Associate has violated a material term of this Appendix.

s. **Failure to Perform Obligations.** In the event Business Associate including its subcontractors or agents fails to perform its obligations under this Appendix, Covered Entity may immediately discontinue providing PHI to Business Associate.  Covered Entity may also, at its option, require Business Associate to submit to a plan of compliance, including monitoring by Covered Entity and reporting by Business Associate, as Covered Entity in its sole discretion determines to be necessary to maintain compliance with this Appendix and applicable law.

t. **Privacy Practices.** The Covered Entity will provide and Business Associate shall immediately begin using and/or distributing to clients any applicable form, including but not limited to, any form used for Notice of Privacy Practices, Accounting for Disclosures, or Authorization, upon the effective date of this Agreement, or as otherwise designated by the Program or Covered Entity. The Covered Entity retains the right to change the applicable privacy practices, documents and forms.  The Business Associate shall implement changes as soon as practicable, but not later than forty-five (45) days from the date of notice of the change.  The version of the Covered Entity's Notice of Privacy Practices current at the time of execution of this Agreement is Attachment 1 to this Business Associate Appendix.

u. **Indemnification.** Business Associate shall indemnify, defend and hold harmless Covered Entity from and all claims and actions, whether in law or equity, resulting from Business Associate's Breach or other violation of the HIPAA Rules. Additionally, Business Associate shall reimburse Covered Entity for any civil monetary penalties imposed on Covered Entity as a result of Business Associate's Breach or other violation of the HIPAA Rules.

6. **Obligations of Covered Entity:**

   a. **Provision of Notice of Privacy Practices.**  Covered Entity shall provide Business Associate with the notice of privacy practices that the Covered Entity produces in accordance with 45 CFR 164.520 (Attachment 1 to this Business Associate Appendix), as well as changes to such notice.

   b. **Permissions.**  Covered Entity shall provide Business Associate with any changes in, or revocation of, permission by individual to use or disclose PHI of which Covered Entity is aware, if such changes affect Business Associate's permitted or required uses and disclosures.

   c. **Restrictions.**  Covered Entity shall notify Business Associate of any restriction to the use or disclosure of PHI that the Covered Entity has agreed to in accordance with 45 CFR 164.522 to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**Attachment 1**



### COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HEALTH (DOH)
### NOTICE OF PRIVACY PRACTICES FOR PROTECTED HEALTH INFORMATION

**What Is This Notice For?**

This notice describes how medical information about you may be used and disclosed and how you can get access to this information. Please review carefully.

---

**What Do We Do To Keep Your Health Information Private?**

Keeping your health information private is one of our most important responsibilities. We are committed to protecting your health information and following all laws regarding the use of your health information. You have the right to discuss your concerns about how your health information is shared.  The law under the Health Insurance Portability and Accountability Act (HIPAA) says:

1.   We must keep your health information from others who do not need to know it.
2.   We must make this Notice available to you, and may only use and share your health information as explained in this Notice.

---

**Who May Use And See My Health Information?**

Commonwealth employees, such as program administrators, may use or share your health information for treatment, payment, and healthcare operations.

Treatment:  We may use or share your health information for treatment.  For example, we may use health information we receive from a health care provider who has seen you, to ensure that you are referred for further needed treatment.

Payment:  We may use or share your health information in order to ensure that health services you have received through our programs are paid for.  For example, we may exchange information about you with another government agency, or a health care provider who has provided you with health services.

Healthcare Operations:  We may use and share your health information in order to manage our programs and to make sure that they serve you well.  For example, we may review your health information and share it with other Commonwealth agencies that must also keep your health information private.

---

**What If The Commonwealth Wants To Use Or Share My Health Information For Other Reasons?**

You will be asked to sign a separate form, called an authorization form, allowing your health information to be used or shared other than for treatment, payment or business operations. The authorization form limits what health information may be used or sent, and says where and to whom the information may be sent.  You can cancel the authorization at any time by letting us know in writing.

Your written authorization is required for the use and disclosure of:

1.   Psychotherapy notes (with limited exceptions to include certain treatment, payment or healthcare operations).
2.   Marketing purposes (with limited exceptions).
3.   Disclosure in exchange for remuneration on behalf of the recipient of your protected health information.

---

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**What Rights Do I Have With Regard To My Health Information**

You have the following rights with respect to your health information:

1.  To amend your information. If you think some of your health information is incorrect or incomplete, you may ask that corrected or new information be added by making a request in writing to the HIPAA Contact Office.    You must state why you think the correction or new information is necessary.    We do not have to make the requested amendment.    If we do, you may ask that the corrected or new information be sent to others who have received your health information from us. If we deny your request, you have the right to file a statement of disagreement with us and any future disclosures of the disputed information will include your statement.

2.  To tell us that you want your health information to be sent somewhere else. We will again ask you to sign an authorization form.  You may be charged for the cost of the copies and sending them. If we have HIV or substance abuse information about you, we cannot release it without a special signed, written authorization from you that complies with the laws governing HIV or substance abuse records. Certain other laws that we must comply with may require us to follow the special requirements of those laws in addition to HIPAA.

3.    To inspect and copy certain health information. To inspect and copy your protected health information, you must submit your request in writing to the HIPAA Contact Office.  If you request a copy of the information, we may charge a reasonable fee for the costs of copying, mailing, or other supplies associated with your request.  You may not see the private notes taken by a mental health provider, health information compiled as part of a legal case, or in other limited circumstances.  In some cases, if we deny your request to see your health information, you may request a review of the denial.

4.    To get a list of where we shared your health information for the last 6 years, unless it was shared for treatment, payment, or healthcare operations.  If you ask for more than one list a year, you may be charged for the cost of providing the list. Your request for your health information must be made in writing to the HIPAA Contact Office.

5.  To request that the Department communicate with you in a certain way or at a certain location. For example, you can ask that we only contact you by mail or phone, or at an address or phone number other than at your home.

6.    To request a restriction or limitation on your health information that we use or disclose for treatment, payment, or health care operations. You also can request a limit on your health information that we disclose to someone who is involved in your care such as a family member or friend. We do not have to agree to the restriction or limitations. If we do agree to the request, we will honor the restriction until you revoke it or we notify you. To request restrictions make a request to the HIPAA Contact Office, you must make your request in writing and tell us what information you want to limit.

7.  To be notified in the event that we (or a Business Associate) discover a breach of unsecured protected health information.

---

**Could My Health Information Be Used Or Released Without My Authorization?**

We follow laws that tell us when we have to share health information, even if you do not sign an authorization form.  We will use or release your health information:

1.    For public health reasons, including to prevent or control disease or injury; or report births or deaths, suspected abuse or neglect, reactions to medications or problems with certain health-related products.

2.  To prevent serious threats to your health or safety or that of another person or the      public.

3.  To carry out treatment, payment or healthcare operations.

4.  To carry out administrative functions your information may be released to specific employees who assist in the administration of the benefits.

5.  To help health oversight agencies monitor the health care system, government programs, and compliance with civil rights laws, including for audits, investigations, inspections, or licensing purposes.

US ex rel. Seilkop v Insight Global LLC
EXHIBIT A

**6.** If a court orders us to, or if we receive a subpoena and receive certain assurances from the person seeking the information.
**7.** To law enforcement officials, if we receive a proper request and the request meets all other legal requirements.
**8.** To coroners, medical examiners or funeral directors, in order to help identify a deceased person, determine the cause of death, or perform other legally authorized duties.
**9.** To organ procurement organizations, if you are an organ donor or as legally required.
**10.** For health-related research that meets applicable legal requirements.
**11.** To military authorities, if you were or are a member of the armed forces and the request is made by appropriate military command authorities.
**12.** To authorized federal officials for national security purposes.
**13.** To Workers Compensation for work-related injuries.
**14.** To other government benefit programs in order to coordinate or improve administration and management of the programs.
**15.** To family or others involved in your treatment or financial affairs, if you have indicated that we can do so or if we can reasonably infer that you do not object.
**16.** As otherwise required by law.

_____

## When Is This Notice Effective?

This Notice went into effect on May, 2013.

_____

## May I Have A Copy Of This Notice?

 You have a right to a paper copy of this Notice of Privacy Practice at any time.  Even if you have agreed to receive this notice electronically, you are still entitled to a paper copy.  We reserve the right to change this Notice, and to apply the new practices to all of your health information, including information we received before the Notice was changed. If we change this Notice and you are still in our Program, we will send you a new one upon request.  You are entitled to the most current copy of the Notice. You can find the most current notice at **http://www.health.state.pa.us/hipaa**

_____

## Contact Information for Complaints or Questions

If you have questions or feel your privacy rights have been violated, you can ask questions or complain by writing to or calling the **HIPAA Contact Office, Department of Health, 8th Floor West, Health and Welfare Bldg. Harrisburg, PA 17120. Phone (717) 232-4019.**

You can also complain to the federal government, Secretary of Health and Human Services, by writing to: U.S. Department of Health & Human Services, Office for Civil Rights, 150 S. Independence Mall West - Suite 372, Philadelphia, PA. 19106-3499.

_____

## Will It Make Trouble For Me If I Complain?

**Your services will not be affected by any complaint made to the Department Privacy Officer, Secretary of Health and Human Services or Office of Civil Rights.**

US ex rel. Seilkop v Insight Global LLC
Page 1 of 3

**FULLY EXECUTED - REPRINT**
Purchase Order No:    4300668050
**Original** PO Effective Date: **07/25/2020**
PO Issue Date:   **07/25/2020**
Valid From: 08/01/2020 To 07/31/2021

| | |
|---|---|
| **Your SAP Vendor #: 537805** | **Please Deliver To:**<br>**DOH-Epidemiology**<br>**625 Forster Street, Rm 933 H&W Bldg**<br>**Harrisburg PA  17120   US** |
| **Supplier Name/Address:**<br>**INSIGHT GLOBAL LLC**<br>**DBA INSIGHT GLOBAL**<br>**4170 ASHFORD DUNWOODY RD NE STE 250**<br>**BROOKHAVEN   GA      30319-1457   US**<br><br>Supplier Phone Number: 404-257-7900<br>Supplier Fax Number: 404-257-1070 | **Please Bill To:**<br>Save time, reduce cost, get paid faster:<br>Email PDF invoice to 69180@pa.gov<br>https://www.budget.pa.gov/Programs/Pages/e-Invoicing.aspx<br><br>Or mail paper invoice to:<br>Commonwealth of Pennsylvania<br>PO Box 69180, Harrisburg, PA  17106 |
| **Purchasing Agent**<br>Name:  Lori Diehl<br>Phone: 717-547-3294<br>Fax: 717-783-3794 | **Purchase Order Description:**<br>Local Purchase Order1 P00043898 07/24/20 |

This Purchase Order is comprised of:  The above-referenced Solicitation, the Suppliers Bid or Proposal, and any documents attached to this Purchase Order or incorporated by reference.

Suppliers must provide four mandatory elements on PO invoices:  PO Number, Invoice Date, Invoice Number, and Invoice Gross Amount.   Failure to comply will result in the return of the invoice.  Additional optional information such as supplier name, address, remit to information and PO Line Item information will improve invoice processing.

| Item | Material/Service Desc | Qty | UOM | Delivery Date | Net Price | Price Unit | Total |
|---|---|---|---|---|---|---|---|
| 1 | Operations Manager | 2,016.000 | Each | 08/01/2020 | 86.95 | 1 | 175,291.20 |

**Item Text**
Resource Count 2
Operations Manager

For the time period of 8/1/2020 - 7/31/2021

| Item | Material/Service Desc | Qty | UOM | Delivery Date | Net Price | Price Unit | Total |
|---|---|---|---|---|---|---|---|
| 2 | Supervisor | 20,160.000 | Each | 08/01/2020 | 37.52 | 1 | 756,403.20 |

| Information: | Total Amount:<br>SEE LAST PAGE FOR TOTAL OF ALL ITEMS |
|---|---|
| | Currency: USD |

Supplier's  Signature  _____      Title  _____

Printed Name  _____      Date  _____

US ex rel. Seilkop v Insight Global LLC

Page 2 of 3

**FULLY EXECUTED - REPRINT**
Purchase Order No:   4300668050
**Original** PO Effective Date: **07/25/2020**
PO Issue Date:   **07/25/2020**
Valid From: 08/01/2020 To 07/31/2021

**Supplier Name:**
INSIGHT GLOBAL LLC
DBA INSIGHT GLOBAL

| Item | Material/Service Desc | Qty | UOM | Delivery Date | Net Price | Price Unit | Total |
|------|------------------------|-----|-----|---------------|-----------|------------|-------|
| | **Item Text** | | | | | | |
| | Resource Count 20 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |
| 3 | **Resource Manager** | 2,016.000 | Each | 08/01/2020 | 47.43 | 1 | **95,618.88** |
| | **Item Text** | | | | | | |
| | Resource Count 2 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |
| 4 | **Contact Tracer - Wave 1** | 242,000.000 | Each | 08/01/2020 | 31.65 | 1 | **7,659,300.00** |
| | **Item Text** | | | | | | |
| | Resource Count 250 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |
| 5 | **Contact Tracer - Wave 2** | 222,000.000 | Each | 08/01/2020 | 31.65 | 1 | **7,026,300.00** |
| | **Item Text** | | | | | | |
| | Resource Count 250 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |
| 6 | **Contact Tracer - Wave 3** | 202,000.000 | Each | 08/01/2020 | 31.65 | 1 | **6,393,300.00** |
| | **Item Text** | | | | | | |
| | Resource Count 250 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |
| 7 | **Trainer** | 5,040.000 | Each | 08/01/2020 | 44.26 | 1 | **223,070.40** |
| | **Item Text** | | | | | | |
| | Resource Count 2 | | | | | | |
| | For the time period of 8/1/2020 - 7/31/2021 | | | | | | |

**Information:**

**Total Amount:**
SEE LAST PAGE FOR TOTAL OF ALL ITEMS

Currency: USD



**FULLY EXECUTED - REPRINT**
Purchase Order No:    4300668050
**Original** PO Effective Date: **07/25/2020**
PO Issue Date:  **07/25/2020**
Valid From: 08/01/2020 To 07/31/2021

**Supplier Name:**
**INSIGHT GLOBAL LLC**
**DBA INSIGHT GLOBAL**

| Item | Material/Service Desc | Qty | UOM | Delivery Date | Net Price | Price Unit | Total |
|---|---|---|---|---|---|---|---|
| 8 | Social Support Coordinator | 10,080.000 | Each | 08/01/2020 | 47.43 | 1 | 478,094.40 |

**Item Text**
Resource Count 10

For the time period of 8/1/2020 - 7/31/2021

| 9 | BI/Reporting | 1,008.000 | Each | 08/01/2020 | 94.85 | 1 | 95,608.80 |

**Item Text**
Resource Count 1

For the time period of 8/1/2020 - 7/31/2021

### General Requirements for all Items:

**Header Text**
Contractor shall provide contact tracing staff.

The term of this purchase order is 08/01/2020 through July 31, 2021.

The terms and conditions applicable to this PO are attached in the Agreement signed by the Parties.

Emergency Procurement approved  by DGS on 07/17/2020.

All quantities are estimated.

Contact Person:  Lindsey Mauldin 717-645-0888.
**No further information for this PO.**

| Information: | |
|---|---|
| | **Total Amount:** |
| | 22,902,986.88 |
| | **Currency: USD** |